IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROGER WALLACE HENDERSON | § | |
|     TDCJ-CID #649974 | § | |
| | § | |
| v. | § | C.A. NO. C-08-036 |
| | § | |
| LAW LIBRARIAN | § | |
|   CANDACE MOORE, ET AL. | § | |

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This is a civil rights action filed by a state inmate pursuant to 42 U.S.C. § 1983. Pending is defendants' motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies, (D.E. 27), which is construed as a motion for summary judgment. See Fed. R. Civ. P. 12(d). Plaintiff has filed a response in opposition, (D.E. 32), and moves for summary judgment on his claims that defendants violated his First Amendment right of access to the courts. (D.E. 33, 34). Defendants have filed a response in opposition. (D.E. 35). For the reasons stated herein, both motions are denied, and this case shall proceed to trial.

## I. JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Upon consent of the parties, (D.E. 10, 21), the case was referred to the undersigned to conduct all further proceedings, including entry of final judgment pursuant to 28 U.S.C. § 636(c). (D.E. 22).

## II. PROCEDURAL BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and at all times relevant to the facts of this lawsuit, was

incarcerated at the McConnell Unit in Beeville, Texas. He filed this lawsuit on January 25, 2008, alleging First Amendment claims of denial of access to the courts against the McConnell Unit law librarian, Candace Moore, and law library clerk, Officer Hardin. (D.E. 1). In particular, plaintiff claims that defendants were aware of his deadline for filing his federal habeas corpus petition, but that they obstructed his timely filing by failing to provide the necessary supplies, in violation of his First Amendment rights. A Spears[1] hearing was conducted on February 12, 2008, following which plaintiff's claims were retained and service ordered on defendants. (See D.E. 12, 13). On May 1, 2008, defendants filed the instant motion to dismiss. (D.E. 27). On May 27, 2008, plaintiff filed his summary judgment response, (D.E. 32), and also moved for summary judgment in his favor. (D.E. 33). Defendants oppose plaintiff's motion. (D.E. 35).

### III.  SUMMARY JUDGMENT EVIDENCE

In support of their motion to dismiss, defendants offer the business records affidavit of Sandra K. Murphy, who is employed as the TDCJ Administrator of Offender Grievances. (D.E. 27, Ex. A, at 2). According to Ms. Murphy, between January 2007 through April 30, 2007, plaintiff filed six Step 1 grievances that were returned as unprocessed, and the TDCJ does not have copies of the unprocessed grievances. Id. Moreover, plaintiff filed a Step 1 grievance regarding a disciplinary matter that was lost by TDCJ. Id. However, she attaches a copy of a Step 1 grievance, Number 2007093592, dated February 2, 2007, in which plaintiff complains that, due to being held in close custody, he is unable to purchase legal materials. Id. at 3-4.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

Plaintiff also offers a copy of this grievance as evidence that he exhausted. (D.E. 33-3). In addition, plaintiff offers his sworn affidavit. (D.E. 33 at 10-11).

The summary judgment evidence establishes the following:

On December 18, 2006, the United States District Court for the Western District of Texas, Austin Division, denied plaintiff's petition for habeas corpus relief in <u>Henderson v. Quarterman</u>, Civil Action 1:06cv290 (W.D. Tex.).

On or about January 9, 2007, plaintiff submitted an I-60 to the law library requesting paper, carbon paper, an ink pen, a writ envelope and postage so that he could file an appeal as well as a request for a certificate of appealability with the Fifth Circuit challenging the dismissal of his federal writ. Plaintiff did not get a response to his I-60. He then asked Sergeant Ford, Sergeant Martinez, and Lieutenant Chiro to contact Ms. Moore about the deadline. Ms. Moore responded that it was not her job to mail out plaintiff's legal work; it was the mailroom's duty. The three officers then contacted the mailroom supervisor, Officer Diaz, who told the officers that, because the unit was on lockdown, it was indeed Ms. Moore's responsibility to provide plaintiff with the supplies. Ms. Moore was instructed to send out plaintiff's legal mail.

On January 17, 2007, Officer Hardin came to plaintiff's cell with the paper, carbon paper and pen that plaintiff had requested, but he failed to bring the writ envelope and postage. Plaintiff told Officer Hardin that his appeal must be placed in the prison mail system that day, or it would be untimely. Officer Hardin indicated that he understood and promised to return shortly with the necessary materials. However, Officer Hardin did not return until the next day, January 18, 2007.

On February 2, 2007, plaintiff filed a Step 1 grievance, Number 20070933592. It reads:

> Inmates on Closed Custody hasn't [sic] had access to purchase legal or personal writing materials since 1-10-07 and the Unit's Mailroom and Law Library refuse to process because I'm not indigent. This Unit is in violation of State as well as Federal law on issue of not allowing the inmate to process legal work to the courts (three cases pending in federal court) as well as maintaining a personal relationship with family or friends.

(D.E. 33-3 at 2). The grievance indicates that despite plaintiff filing it on February 2, 2007, it was not "received" by prison officials until February 8, 2007. Id.[2] By response dated March 20, 2007, Warden Jackson responded:

> A review of your grievance has been completed. Your request was processed in accordance to AD 07.90. Although your account reflected "Active Account," your request was processed immediately on the seventh day of week one lockdown status. No further action.

Id. at 3.

On March 6, 2007, plaintiff was moved from 8 Building to 11 Building, solitary cell 19. (D.E. 33 at 10). He never received a copy of the Step 1 response. Id.

On May 2, 2007, the Fifth Circuit dismissed plaintiff's habeas corpus appeal for lack of subject matter jurisdiction because the trust fund statement was dated January 18, 2007, making his appeal notice untimely. (D.E. 1, Ex. 2) (Fifth Circuit's dismissal).

---

[2] Interestingly, the February 8, 2007 date for "receipt" of the grievance is forty days prior to the response by Warden Jackson to the grievance. Of course, forty days is the maximum amount of time that prison officials have to respond to a Step 1 grievance. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)). It is unclear where the grievance was for the six-day period between the time it was submitted by plaintiff and "received" by prison officials.

4

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the

pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

## V.  DISCUSSION

**A.    Plaintiff's Exhaustion Of His Claims Against Defendants.**

Defendants move for summary judgment to dismiss plaintiff's claims on the grounds that he has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e.

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 83-85 (2006). Because exhaustion is an

affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 921 (2007).

The TDCJ provides a two-step procedure for presenting administrative grievances. Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam).[3] A prisoner must pursue his grievance at both the Step 1 and Step 2 levels in order to exhaust his administrative remedies. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) (citing Wright v. Hollingsworth, 260 F.3d at 358 n.2).

The purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court. Woodford, 548 U.S. at 94. As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

Here, defendants maintain that plaintiff failed to exhaust his administrative remedies for two reasons. First, he did not file a Step 2 grievance. Second, the Step 1 grievance that he did file, Number 2007093592, did not identify defendants Moore or Hardin by name. (D.E. 27 at 4).

Defendants' arguments are unpersuasive based on the facts in this case. Plaintiff did not file a Step 2 grievance because his Step 1 grievance resolved the issue. Plaintiff's inmate trust fund account statement was indeed mailed to the Fifth Circuit. Thus, there was no other further action for plaintiff to seek. Under TDCJ policy, a prisoner must file a Step 2 grievance within

---

[3] The inmate must first file a Step 1 grievance filed at the institutional level, and, next, in a Step 2 grievance at the regional level. Wendell, 162 F.3d at 891 (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)). If an inmate does not receive a written decision within 180 days after filing his Step 2 grievance, he may proceed with his other state or federal court remedies. Tex. Gov't Code § 501.008(d)(2).

ten days after receiving "an <u>adverse</u> decision at Step 1." <u>Johnson</u>, 385 F.3d at 515 (emphasis added). Here, there was no "adverse decision" for plaintiff to appeal. When an inmate has obtained a favorable ruling in the initial phase of the administrative review, a subsequent administrative appeal is unavailable. See <u>Abney v. McGinnis</u>, 380 F.3d 663, 669 (2d Cir. 2004); <u>Veloz v. New York</u>, 339 F. Supp.2d 505, 513 (S.D.N.Y. 2004), <u>aff'd</u> 178 Fed. Appx. 39 (2d Cir. 2006) (per curiam) (unpublished).

     Moreover, even if it was necessary for plaintiff to file a Step 2 grievance, the uncontested facts establish that he could not have done so timely because he did not receive a copy of the Step 1 response. The Step 1 grievance had plaintiff's prior housing assignment in 8 Building indicated as "8K30." (D.E. 33-3 at 2). On March 6, 2007, plaintiff was moved to a new cell in 11 Building. (D.E. 33 at 10). Plaintiff testifies under oath that he never received a copy of the Step 1 response, and defendants have failed to refute this allegation with any facts or evidence. Clearly, as plaintiff was within prison official's control and custody during this entire period, defendants could not credibly assert that they could not deliver the response to plaintiff at his then current cell location.

     The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient, or would not further the purposes of the Prison Litigation Reform Act. <u>Underwood v. Wilson</u>, 151 F.3d 292, 296 (5th Cir. 1998) (per curiam) (citing <u>McCarthy v. Madigan</u>, 503 U.S. 140, 146-49 (1992)). For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so. <u>Id.</u> (citing <u>Shah v. Quinlin</u>, 901 F.2d 1241, 1244 (5th Cir. 1990)). An administrative remedy is not available where prison officials ignore or

interfere with the prisoner's pursuit of relief. Id. (citing Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982)).

The Fifth Circuit has explained that an inmate's "administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding has been thereto has expired." Powe, 177 F.3d at 394 (citing Underwood, 151 F.3d at 295). Other federal appellate courts have determined that where prison officials fail to timely respond to a formal grievance, then the exhaustion requirement is deemed satisfied. Boyd v. Corrections Corp. of Am., 380 F.3d 989, 996 (6th Cir. 2004); see also Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable"); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) ("once [prison officials] failed to respond to [the inmate's grievance], no further administrative remedies were 'available' to him").

Here, not only is there a question of whether prison officials completed the review within forty days required by TDCJ regulations, more importantly, it is uncontested that prison officials did not return the Step 1 response to plaintiff. Under the particular circumstances of this case, the fact that plaintiff *never* received a copy of the Step 1 response excuses any failure to exhaust.[4]

---

[4] Curiously, there are other irregularities with the Step 1 grievance in particular, and plaintiff's grievance records on the whole. Although there is a written response to Grievance Number 2007093592, the box stating "submission in excess of 1 every 7 days" is also checked. Additionally in her affidavit, Ms. Murphy references an appeal of a disciplinary case, but admits that a copy of this grievance "has been misplaced". (D.E. 27, Ex. A. at 2). Not to mention that TDCJ has no record of the other six grievances plaintiff filed that were returned unprocessed during the time when this issue arose. Id.

Defendants also argue that plaintiff failed to exhaust his claims against defendants because he did not name them specifically in the Step 1 grievance.

In <u>Johnson</u>, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  The <u>Johnson</u> court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'"  <u>Johnson</u>, 385 F.3d at 517 (citations omitted).  In addition, the nature of the complaint will influence how much detail is necessary.  <u>Id.</u>  For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition might not identify any individual.  <u>Id.</u>

Here, plaintiff alleged in his Step 1 grievance that the "law library" refused to process his request.  (D.E. 33-3 at 2).  For all intensive purposes, "Ms. Moore" is synonymous with the law library as she makes the decisions affecting prisoners and, in this case, was responsible for the procurement and plaintiff's inmate trust fund account statement.  Similarly, Officer Hardin is a "law library officer," and was known to plaintiff in that manner.  Indeed, plaintiff testified at the <u>Spears</u> hearing that he spoke to Officer Hardin on January 17, 2007 and told him directly that his inmate trust fund account statement must be dated that day.  Officer Hardin assured him that he would return with the paperwork, but failed to do so.

Defendants admit there was confusion as to whether the mailroom or the library was to process plaintiff's trust fund request when the unit was on lockdown.  This confusion caused an unnecessary delay in plaintiff's trust fund information being mailed to the Fifth Circuit, and ultimately, the dismissal of his appeal.  Ironically, the Step 1 response notes that plaintiff's

request "was processed immediately on the seventh day of week one lockdown status." (D.E. 33-3 at 3). The *seventh day* is not *immediately.*

Plaintiff's grievance sufficiently notified defendants of the charges against them. Accordingly, defendants' motion for summary judgment to dismiss for failure to exhaust, (D.E. 27), is denied.

**B.      Plaintiff's Motion For Summary Judgment.**

Plaintiff argues that defendants are not entitled to immunity because he sued them in their official and individual capacities.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars a suit for money damages against a state or state agency. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past, although prospective relief may be granted. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

Thus, to the extent plaintiff sued defendants in their official capacities, those claims are against the State of Texas and are barred by the Eleventh Amendment. Thus, plaintiff's claims against defendants in their official capacities are dismissed.

Plaintiff claims also that defendants are not entitled to qualified immunity. However, he has failed to address his denial of access to the courts claim in particular, and fails to create a fact

issue as to the reasonableness of defendants' actions.[5] Accordingly, plaintiff's motion for summary judgment, (D.E. 33), is denied.

### VI. CONCLUSION.

Accordingly, the dispositive motion filed by both parties, (D.E. 27, 33), are both hereby DENIED. The issue of whether defendants denied plaintiff meaningful access to the courts, and the issue of whether damages are appropriate both remain for trial.

ORDERED this 2nd day of July 2008.

BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

---

[5] In their response to plaintiff's motion for summary judgment, defendants assert they are entitled to qualified immunity. (D.E. 35, at 4). In their dispositive motion, however, defendants never raised the issue of qualified immunity. (D.E. 27).